## ZABDIEL B. ADAMS *et al. versus* EDWARD CRUFT *et al.*

A testator, after giving to his wife his mansion-house and the income of certain perso-
nal estate for her life, directed that, at her decease, the same should " be divided
among his children, share and share alike, and to the heirs of their bodies respec-
tively;" and that, if such income should not amount to $ 1000 annually, the defi-
ciency should be made up from the personal estate. To his sisters and nephew he
bequeathed small annuities, and to his sons the sum of $ 10,000 each. He also gave
$ 10,000 to trustees, the income of which was to be paid over to his daughter C.
during her life, " and at her decease the whole principal and interest to be divided
equally among the heirs of her body, if any ; and in default thereof, the same to
go to her surviving brothers and sister in equal shares, and to their heirs forever ; "
and in case she should be married before the youngest child of the testator arrived
at full age, the executor was authorized to advance to her a sum not exceeding
$ 2000, taking therefor her receipt on interest, the same to be deducted from her
share in the division of the estate. The residuary clause of the will was as follows :
" My will is, that as soon as my youngest child shall have arrived at full age, all
the rest and residue of my estate, real and personal or mixed, after providing for
the annuities to my two sisters and nephew, except such as is bequeathed to my
said wife during her life, shall be divided into equal parts ; one of which to go to
each of my *said children, who shall be then living, and to the heirs of their bodies
respectively forever, and to none other.*" It was *held,* that the words " heirs of their
bodies," in the residuary clause, were to be construed as words of limitation and not
as words of purchase ; that as they would have created an estate tail in real estate,
the children were entitled to the residuary fund, which consisted of personal estate
only, as their absolute property ; and that, as no directions were given as to the
investment or management of the residuary fund, and no designation of usufruct
expressed, as distinct from an absolute gift to the children, the fund itself should be
distributed among them, when the youngest child arrived at full age, subject to the
charges for securing the income of the widow and the annuities.

THIS was a bill in equity brought by Zabdiel B. Adams
and Sarah M., his wife, George W. Holland, David R
Griggs and Aaron D. Weld junior, Edgar K. Whittaker and
Catharine C., his wife, Isaac Mansfield, Frederick W., Sa-
rah and Elizabeth Holland and Ann West, against Edward
Cruft, administrator with the will annexed, of John Holland,
and against others, the grandchildren of John Holland.

The bill alleges, that on August 23, 1822, John Holland
made his will, in which were the following clauses :

" I give to my wife, Sarah, during her natural life, all my
mansion-house and appurtenances, with the furniture and stores
as the same shall remain at my decease, and my pew in Fed-
eral street meetinghouse ; also the income and profits of my

right in the Boston Pier or Long Wharf, being one full share of the same, that is, three warehouses and one twenty-fourth part of said wharf ; and at her decease, the said mansion house, with the remainder of the furniture and stores, if any, the pew and also said right, to be divided among my children, Samuel M , Sarah M., George W., Catharine C. and Frederick W., share and share alike, and to the heirs of their bodies respectively ; and if the net annual income of my said right in the same Boston Pier shall, in any one year during the life of my said wife, fall short of the sum of $ 1000, my will is that such deficiency be paid to her by my executor, from my personal estate ; it being my intention, that the annual provision for her support shall in no event be less than $ 1000, besides the occupation or rent of my said mansion-house, if she shall prefer to let the same."

" I give to my sister Elizabeth Holland, to my sister Ann West and to my nephew Thomas Holland, to such of them as shall survive me and to each of them, $ 60 per annum, payable half yearly, from the day of my decease during their lives respectively."

" My will is, that so soon as my youngest child shall have arrived at full age, all the rest and residue of my estate, real and personal or mixed, after providing for the annuities to my two sisters and nephew, except such as is bequeathed to my said wife during her life, shall be divided into equal parts ; one of which to go to each of my said children who shall be then living, and to the heirs of their bodies respectively for ever, and to none other."

The bill further alleges, that the testator died on June 18, 1824 ; that E. Cruft was appointed administrator with the will annexed ; that Thomas Holland has long since deceased ; that Frederick W. Holland, who was the youngest child of the testator, arrived at full age, on June 22, 1832 ; that Samuel M. Holland, now deceased, for a valuable consideration, assigned all his right and interest in and under the devises aforesaid to George W. Holland ; that George W. has assigned all the interest so devised to him to Griggs and Weld, by way of collateral security ; that upon a treaty of marriage between Edgar K. Whittaker and Catharine C.

2 *

Adams
v.
Cruft.

Holland, all her interest under said devises was conveyed in trust, and that Mansfield is now the trustee ; that Samuel M., at his death, left three children ; that Zabdiel B. Adams and his wife had four children ; that George W. has two children ; and that Edgar K. Whittaker and his wife have one child ; that all these children (who are respondents) are minors ; that the respondent Cruft, under the devise first set out, and under the bequest of annuities, and the charge thereby made on the estate of the testator and the trust thence arising, ought to have set apart a sufficient sum for the satisfying thereof, and ought to have declared the trusts for which the same was set apart, but that he had declined to set apart any portion of the property for that purpose ; for that after satisfying the specific and other devises and legacies, providing a fund for the maintenance of the widow and for paying the annuities, he would have had, at the time when Frederick W. arrived at full age, and now has in his hands, as administrator, a large sum of money, being the residue of the estate, which ought to have been divided, in equal shares, among such of the complainants as were the children of the testator, or their representatives, as an absolute estate ; but that he had refused so to do. Wherefore the complainants pray an account &c., and that execution of the trust may be decreed.

The answer of Cruft alleges, that the annuities bequeathed are made a charge upon the whole residuary fund claimed, not upon any particular portion thereof ; that if the testator had intended that the residuary fund should be divided, as now claimed by the bill, he, the testator, would have set apart a fund to be charged with the annuities ; that the whole of the residuary fund claimed is pledged, in the hands of the respondent, for the purpose of making up any deficiency in the income provided for the widow. It denies, that it is the duty of the respondent to set apart a fund to be charged with the annuities &c., at the respondent's own risk, without the assent of the annuitants &c. ; and admits that a large amount of personal, but no real estate, has come into his hands, which he is desirous to pay over to the person who may be entitled thereto, but denies that the complainants are

entitled to their shares, as they claim the right to receive them, as an absolute estate.

The other respondents answered by their guardian *ad litem*, Francis O. Watts Esq., denying that Samuel M. could legally assign &c., or that the residue of the estate ought to have been divided when Frederick W. came of age, among the complainants in equal shares, as claimed in the bill, other than the annual profits, or that a fund should be set apart for the annuitants &c. ; and alleging, that they believe that it was the intention of the testator, that the property should be secured for the benefit of the grandchildren as well as children.

To these answers the complainants filed a general replication.

There was another clause in the will, by which the testator gave the sum of $ 7,800 to trustees, to be invested in stocks or real estate, and the interest and dividends to be paid over to his daughter Sarah M. during her life ; at her decease, the principal and interest were to be divided equally among the heirs of her body, if any ; and in default thereof, the same were to go to her surviving brothers and sister, in equal shares, and to their respective heirs forever.

The testator also gave the sum of $ 10,000 to the same trustees, in trust for his daughter Catharine C., with similar provisions ; and in case she should be married before Frederick W. should arrive at full age, the executor was authorized to advance to her, as an outfit, a sum not exceeding $ 2000, taking therefor her receipt on interest, the same to be deducted from her share in the division of the estate.

By other clauses in the will, the testator gave $ 10,000 to each of his sons.

*Fletcher* for the complainants. The intent of the testator, in the residuary clause of the will, is too plain to require the aid of any technical rules in its construction. The residue 's all personal estate ; and the testator says that it shall go to each of his children, who shall be living at a certain time, and to the heirs of their bodies. Even if the children were to take only a life estate in such residue, still, as no trustee is appointed, they would be entitled to have their shares deliv-

Adams
*v.*
Cruſt.

ered over to them. *Weeks* v. *Weeks,* 5 N. Hamp. R. 326 If the residue had been real estate, this clause would have created an estate tail ; and it will perhaps be contended, that it has a similar effect upon personal estate ; but it is well settled, that words which would create an estate tail when applied to real estate, give an absolute property to the first taker, when applied to personal.

It may be argued, that though personal estate cannot be entailed, yet you may give a life estate in it, with remainder over, as an executory bequest ; this is true, but then there must be words expressly giving a life estate, and the words of the remainder over must be words of purchase and not of limitation ; both these requisites are wanting in this residuary clause. In order however to carry into effect the intention of the testator, the words " heirs of their bodies," if applied to the children of the living children of the testator, will be deemed words of limitation ; but they will be applied to the children of a child who dies before the time appointed for the division of the residue, as words of purchase ; otherwise no provision is made in the will for the children of such deceased child.

It appears that the testator understood how to give a life estate ; and if he had intended to give such an estate in the residue to his children, he would have provided, that they should enjoy the income only during their lives, and would have appointed a trustee. *Weeks* v. *Weeks,* 5 N. H. R. 326.

The provision in the bequest to his daughter, Catharine C., that a sum not exceeding $ 2000 should, in a certain event, be advanced to her and be deducted from her share on the division of the estate, shows that it was his intent that the children should take absolutely ; for otherwise, it could not be so deducted.

If the residue had been real estate, the entail could have been broken, the moment that it came into the possession of the children ; and personal estate cannot be more strictly limited than real estate.

If it should be held, that the children and grandchildren of the testator took as tenants in common, then it could not

be known what share each would be entitled to, until there was an end of the increase of the grandchildren.

*Cooke, W. J. Hubbard* and *Watts* for the respondents. 1. The children of the testator, living at the time of the arrival of Frederick W. at full age, take the residue as tenants in common with the grandchildren. *Annable* v. *Patch,* 3 Pick. 360 ; Gilb. Uses, 25 ; *Wild's case,* 6 Co. 17 ; *Doe* v *Laming,* 2 Burr. 1100 ; *Bowers* v. *Porter,* 4 Pick. 198 ; *Ellis* v. *Proprietors of Merrimack Bridge,* 2 Pick. 243 ; *Durdant* v. *Burchet,* Skinner, 205 ; *Wills* v. *Palmer,* 5 Burr. 2615.

2. It was the intention of the testator to give only a life estate to his children, and an executory bequest to his grandchildren.

It is clear from an examination of other clauses in the will, that the words " heirs of their bodies " were used in a popular sense, as synonymous with " children," which is a word of purchase ; and if so, an interest in the property was secured to the grandchildren, as purchasers, as absolutely as to the children. But suppose that they were used in a technical sense, then the *St.* 1791, *c.* 60, § 3, will apply. It is not essential, in order to produce this effect, that the life estate should be given in so many words, but it is sufficient if it be given by necessary implication, as in the present case. *Bowers* v. *Porter,* 4 Pick. 198.

It is said, that where personal estate is given by words that would create an estate tail if applied to real estate, it becomes the absolute property of the first taker ; but this rule will not be applied where, as in the present case, it would defeat the intention of the testator. Besides, this is a will of real, as well as personal estate ; and it is to be presumed that the testator used the words in the same sense throughout.

The circumstance that no trustee was appointed by the testator, is of no consequence ; for the executor may act as trustee. *Claggett* v. *Hardy,* 3 N. Hampsh. R. 147 ; *Saunderson* v. *Stearns,* 6 Mass. R. 37.

As to the argument drawn from the provision in the bequest to Catharine C., the deduction was, in effect, to be made from the sum of $ 10,000 bequeathed in trust for her

SHAW C. J. delivered the opinion of the Court. The principal question to which the attention of the Court has been called in this case by the course of the argument, arises upon the construction of the residuary clause, in John Holland's will ; and the question is, who are to take, and what estates respectively, by the terms of that clause in the will.

It may be remarked in the outset, that although the wil. embraces both real and personal estate, yet it appears by the facts in the case that there is no real estate, upon which this residuary clause can operate, and that the question actually before us, is only as to the effect of this clause upon personal property.

It is contended on the part of the grandchildren, that the words " heirs of their bodies," used in this clause, are not to be taken as words of limitation, qualifying the estate of inheritance given to the sons and daughters, but are here used synonymously with the word " children," and so to be considered as *descriptio personarum*, designating the grandchildren, who are to take portions of this estate as purchasers.

That words, which in their natural and ordinary signification are words of limitation, may be construed to be words of purchase, there is no doubt ; but this will take place only where it is the clear and manifest *intent* of the testator, to be ascertained by the qualifying words used in immediate connection with the particular terms, or to be derived from other parts of the same will. The general rule is, that the intent, as expressed by the will, shall govern ; and to give effect to this rule, the language of the will shall have its natural and technical construction, unless it is obvious that the testator used it in a different sense. And in the latter case, there are scarcely any words, however strong and explicit in themselves, which may not be controlled and limited by such different intent, expressed by the will itself.

So it has been held, that a devise to one and the heirs of her body, under particular circumstances shall be held to make the heirs take by purchase. But the circumstances were very peculiar, and the intent of the testator manifest. *Doe* v. *Laming*, 2 Burr. 1100.

So it has been held by the highest authority, that a devise

to the " *heir* " of one, known to the testator at the time to be living, notwithstanding the well-known maxim, *nemo est hæres viventis*, shall be construed to be " heir apparent," and a description of the person, so that the person thus designated shall take by purchase. This however was so held upon clear proof, from other parts of the will, that the testator knew, that the ancestor of the person named as heir, was living and so could not have used the word in its technical sense, and also of an intent that the person designated should take. *Darbison* v. *Beaumont*, 1 P. Wms. 229.

But the Court are all of opinion, that the words, " heirs of their bodies," as annexed to the word children in this will, are to be construed as words of limitation and not as words of purchase, because these words, in their ordinary legal import, are words of limitation and not of purchase, and because there is nothing in this will showing an intent on the part of the testator to use them in a different sense, and nothing to show an intent, either in their connection with other words in the sentence in which they were used, or in any words or provisions of the will, that his grandchildren should take originally and in their own right equally with his children, which would be the effect of treating them as purchasers. On the contrary, we think, that by a comparison of different parts of the will with each other, a different intent will be apparent.

This case is extremely distinguishable from that of *Annable* v. *Patch*, 3 Pick. 360, cited in the argument. There the words used were " to my daughter and the children born of her body." The Court held, that this was a description of persons, who with the mother should take as purchasers. That cause was decided principally upon the authority of *Buffar* v. *Bradford*, 2 Atk. 220, in which it was said by the chancellor, that the word " children," in its natural import was a word of purchase ; but the use of the word " heirs " would have had a very different construction.

When it is said the intent of the testator is to be a governing rule in the construction of wills, it must be understood to be such an intent as can be carried into effect, according to established rules of law. To apply this remark to this will ; the testator declares that this residue is to go to his

children and the heirs of their bodies respectively forever *and to none other*. Now if it was the intention of the testator, to create a perpetuity in his family and to keep this property in the houses of his lineal descendants, and make it inalienable, it is very clear that such an intent being in violation of the rules of law, cannot be carried into effect. And in the present case, the last words, " and to none other," seem to be wholly inoperative and void. The strict question of intent rather seems to be, whom or what persons did the testator intend to make the objects of his bounty, and what quality or species of estate, did he intend to create and vest in them respectively. This being ascertained, in the manner already stated, by the particular language used, qualified and limited by every other part and clause of the will, the law annexes to the estate thus created, the incidents and the character which belong to it. And it will not be presumed that the testator had a different intent from that which the words naturally import, so as to change the construction of the will, in creating a particular estate, although that estate will be attended by some consequences, which the testator did not anticipate. For instance, if a testator not knowing that an estate tail might be barred by a common recovery, and in our own State by a simple deed, so as to defeat the heirs in tail, should insert a devise in his will, which by law would operate to create an estate tail, accompanied by expressions, showing his expectation that it was to continue inlienable till his issue were extinct, it would afford no reason for putting a forced construction on the will, and holding it not an estate tail, because his intent to benefit his heirs in tail, in perpetuity, might otherwise be defeated.

Nor is it to be presumed, without satisfactory proof from other parts of the will, that when a testator uses language, which is often used on like occasions, which has been the subject of frequent judicial discussion and exposition and is well understood, he intends to use it in a sense different from that in which it has usually been understood and applied. The clause in question, contains precise, apt and technical language to create an estate tail, and there is nothing in any part of the will, to show that such was not his intent, unless

it be the words already cited, showing an intent, that the property should continue inalienable in the line of his own family, till extinct; and this manifests rather an intent to give a certain effect to an estate tail, which the law will not warrant, than an intent not to create an estate tail in his children.

Another construction put upon the will in question and contended for in behalf of the grandchildren is, that it gives the residue to the children for their lives, and afterwards to their children, and so by force of the statute of this commonwealth, *St.* 1791, *c.* 61, § 3, controlling and in effect repealing the rule in *Shelley's case*, here was but a life estate to the children as first takers, with a remainder in fee to their children. We think it quite impossible to maintain this position; there are no words, and certainly there is no intimation in this residuary clause, that the property is given to the children for their lives. It is not contended that this is a gift for life expressly, but it is contended that it is so by necessary implication. This brings the case back to the question already discussed, whether the words " heirs of their bodies " as here used, are words of limitation or words of purchase; because all the considerations which go to show that these are used as words of limitation, and do not constitute a *descriptio personarum*, conclude as strongly against their claiming in the character of remainder-men, as against their claiming in the character of tenants in common, with their parents.

The term "heirs of the body," is a designation strictly technical, and they are words of limitation not confined to children, but include lineal descendants indefinitely. They are then words of inheritance, limiting the descent to a particular class of heirs. Such a limitation constitutes an estate tail in real estate; and by a well settled rule of law, words which create an estate tail in real estate, will give an absolute interest in personal property.

The construction adopted derives support from other clauses and provisions in the will. The argument is, that by the words " heirs of the body," the testator must necessarily have intended children. In one clause he gives real and personal property to his wife for life, with remainder to his five chil-

dren, naming them, share and share alike, " and to the heirs of their bodies respectively." This remainder is beyond question an estate tail to the five children as tenants in common in the real estate. In the trust for his daughters, the property is given in trust for each daughter during her life, and at her decease to be divided equally among the heirs of her body, if any, and in default thereof, to her brothers and sister in equal shares and to their respective heirs. Now here I do not understand, that the testator, by " heirs of her body," meant children to the exclusion of issue in a remoter degree ; but if there were grandchildren, it was his intention that they should take the property, in preference to the collateral relations, to whom it was limited. The testator may have been mistaken in point of law in supposing that an estate tail might be limited in personal property ; but these provisions manifestly show, that when the testator used these words, he used them in their natural and proper sense, as equivalent to issue, or lineal descendants indefinitely ; and if they were so used in the clause in question, then it has been already shown that they create an estate tail in the real estate and an absolute gift in the personal property.

Another question considered was, whether, since the youngest of the legatees has come of age, the capital is now to be divided, subject to the charges for securing the annuities to the widow and legatees. That the capital or principal sum was to go to the children, subject to those charges, and not to be put at interest or retained by the executor as trustee, is manifest, we think, from several clauses in the will.

It is to be observed, that there is no intention manifested on the part of the testator, that the income or profits or improvements of the property should go to the legatees, or any designation of usufruct expressed, as distinct from an absolute and direct gift to them. There are no directions given to invest the amount or place the same at interest, and it would be highly probable that some directions would have been given as to the management of this fund, had it been understood by the testator that it was to remain in the hands of the executor or other trustees, during the lives of all the children respectively.

The advance to be made to the daughter out of the general funds by the executor, in case of her marriage, in anticipation of a division and distribution, shows that the fund itself was to be divided; and the charge of interest on such advance, shows that it was to be divided within some reasonably limited time. But if not to be made, when the youngest of the children should come of age, there was no time fixed; and if a distribution was not to be made at that time, it is difficult to perceive any good reason, why that time was fixed at all, by the will.

The Court accordingly decreed, that by the will of John Holland, an absolute estate and property in the residuum of the personalty was vested in the children of the testator, and was distributable among them and their legal representatives, when Frederick W. Holland arrived at full age; that the annuitants and other complainants were entitled to have a fund set apart out of the personalty, to provide for the payment of the annuities or for the purchase of annuities of equal amount, at the option of the annuitants; and that the widow and other complainants were entitled to have an adequate sum set apart to provide for any insufficiency of the income of the testator's right in Long Wharf, to make up the annuity bequeathed to her.